[No. 2,002.]

## ALPHONSO B. SMITH AND GEORGE V. SMITH v. JAMES M. McDONALD AND C. F. COLTON.

APPEARANCE FOR INFANT DEFENDANTS BY GENERAL GUARDIAN.—Where, in a suit against infants, there was no personal service upon them, but their general guardian appeared and defended for them: *held*, that such appearance gave the Court jurisdiction of their persons.

DOCTRINE OF STARE DECISIS. — When a rule, by which the title to real property is to be determined, has become established by positive law or by deliberate judicial decision, its inherent correctness or incorrectness, its justice or injustice, in the abstract, are of far less importance than that it should, itself, be constant and invariable.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

The facts are stated in the opinions.

There having been a judgment in the Court below in favor of defendants, the plaintiffs appealed.

*R. C. Clark* and *James L. English*, for Appellants.

Under the provisions of the Practice Act, a *defendant* may appear and answer without the service of a summons; and a voluntary appearance of the *defendant* shall be equivalent to service of summons; but it is the *defendant* who must appear, and not a guardian for him. It is true section sixteen of the Guardian Act provides that the guardian " shall appear for and represent his ward in all legal suits and proceedings, unless when another person is appointed for that purpose as guardian or next friend;" but this gives him no power to bring his ward into Court, or to give a Court jurisdiction by voluntary appearance; for the voluntary appear-

ance which will give jurisdiction of the person must be the *voluntas* of the defendant, and not of some other person. A guardian cannot bind the ward by his appearance. (*Fox* v. *Minor*, 32 Cal. 117.) Compare, also, Practice Act of 1850 with Practice Act of 1851, from which it will be seen that the law was expressly amended in 1851 so as to require in all cases personal service upon the infant before the Court could acquire jurisdiction of the person of an infant. "The provision of the statute requiring personal service upon the minor and also upon the guardian, is not the result of a misprint or a clerical mistake, but the deliberate will of the Legislature—as such it is our duty to carry it out." (*Gray* v. *Palmer*, 9 Cal. 638.)

*J. W. Winans* and *J. K. Alexander*, for Respondents.

The appearance of the infant defendants, in the case of *Smith* v. *Smith et al.*, by their guardian, was sufficient, and fully protected the defendant McDonald in his purchase of the property under the decree of the Court. Even if there were no other defense in this case, we submit that the decision of this Court in *Gronfier* v. *Puymirol*, 19 Cal. 629, settles the question in favor of respondents, and sustaining the decision of the Court below. (See, also, Hitt. Dig. 3362, 3368, 3377; *Stuart* v. *Allen*, 16 Cal. 475; *Seale* v. *McLaughlin*, 28 Cal. 669; *Taylor* v. *Atwood*, 2 Peere Williams, 643; *Beverly* v. *Miller*, 6 Munford, Va. 99; *Wells* v. *Dennis*, 3 Johns. Ch. 368; *Booth* v. *Rich*, 1 Vernon, 295; *Evertson* v. *Tappan*, 5 Johns. Ch. 497; *Wilkinson* v. *Oliver*, 4 Hening & Munf. 450; *Meriwether* v. *Hites*, 2 A. K. Marsh, 182; *Christman* v. *Wright*, 3 Iredell's Equity, 549; *Este* v. *Strong*, 2 Hammond, Ohio, 461.)

By the Court, WALLACE, J.:

The facts, or most of them, out of which the present controversy arises, may be seen in the report of the case of

*Smith* v. *Smith*, 12 Cal. 217. At the sale under the decree which the Court below rendered in that case, by the direction of this Court, lot six, between M and N, and Eighth and Ninth streets, in the City of Sacramento, was purchased by the defendant McDonald. The plaintiffs here, who now seek to recover it from him, were the infant defendants in that case, and they now claim that the proceedings resulting in the sale are void as to them, on the ground that jurisdiction of their persons was never acquired.

It appears, from the findings filed in this action, that no summons was personally served upon the infant defendants in that action, but that, without such service being made or attempted, their father, F. C. Smith, who was himself a defendant, and was at the time their general guardian, duly appointed, qualified, and acting, " appeared in said action, and by attorney, for himself and them, defended the same; that said attorney, on behalf of said infants and in their names, and F. C. Smith as their guardian, demurred to the complaint therein," etc.

It is insisted by counsel that F. C. Smith, as such general guardian, had no authority to appear for his wards in that action, because no service of summons had been made upon them, or either of them; and that, in the absence of such service, the appearance so entered was of no legal import whatever, and, as a consequence, that the decree subsequently rendered therein was absolutely void, to all intents and purposes, as to them.

The question thus presented, though jurisdictional in its consequences, is purely one of practice. It is a question of correct or incorrect procedure in cases in which infant defendants are impleaded, or attempted to be impleaded, in Courts of justice. It is exactly the question which arose and was determined here in the case of *Gronfier* v. *Puymirol*, 19 Cal. 629, and ever since the decision there rendered, it has been regarded as definitively settled in the Courts of this

State.  In that case, Gronfier, the infant defendant, was not
within the territorial jurisdiction of the Court in which he
was impleaded; he was at the time in France, of which
country he was a resident.  No service of summons was
made or attempted upon him.  Mr. Lies having been ap-
pointed to be his guardian by the Probate Court, under that
provision of the statute authorizing such an appointment for
a minor "who shall reside without the State and have any
estate within the county," entered his appearance in the ac-
tion.  Objection being subsequently made here to the au-
thority of the guardian in that respect, the objection was
held not well taken.  Mr. Chief Justice FIELD delivering the
opinion of the Court, upon this point said: "As Lies was
general guardian, there was no occasion for his special ap-
pointment as guardian *ad litem* in the action.  As general
guardian he was authorized—indeed it was his duty—to ap-
pear for his ward."

It is believed that the authority of that case, upon the
point involved, has never been doubted or called in question
until now.  The construction which it gave to the statute, in
the respect now under consideration, has since then been
steadily adhered to by the Courts—it has been relied upon
by the profession in the examination of titles, and acted
upon in the purchase and sale of real estate during the inter-
vening period, now some eight years—and property interests
of immense magnitude must be imperiled if it is to be over-
turned now.

Under such circumstances it has arisen to the importance
of a rule of property, and even though it were conclusively
shown to have been, as an exposition of the statute it at-
tempted to construe, incorrect at the outset, I think it, nev-
ertheless, our duty to maintain it now, and not permit it to
be disturbed.  If its operation for eight years in practice
has indeed shown it to have unnecessarily facilitated the

despoliation of the estates of infants, it certainly is not for us. to abrogate it for such a reason.

The Legislature can make such change, if it be desirable, without the disturbance of titles and the destruction of individual rights, which invariably follow such a change when brought about by a judicial decision. When a rule, by which the title to real property is to be determined, has become established by positive law or by deliberate judicial decision, its inherent correctness or incorrectness, its justice or injustice, in the abstract, are of far less importance than that it should, itself, be constant and invariable. We should not disturb such a rule of property here, even though we be satisfied that we could substitute another preferable in theory, or better calculated by its operation to promote the purposes of justice.

Entertaining these views, I am of the opinion that the judgment of the Court below should be affirmed, and it is so ordered.

CROCKETT, J., dissenting:

The defendant McDonald deraigns title to the demanded premises through a judicial sale in the case of *Augusta S. Smith* v. *F. C. Smith et als.*, and a Sheriff's deed in pursuance thereof. The present plaintiffs were named as defendants in that action, and were minors at the date of the decree therein. No summons, however, was ever served upon them, and being minors they were incapable of binding themselves by a voluntary appearance, had they attempted to do so. But it appears from the findings that their father (who was also a defendant, and appeared to the action) was their general statutory guardian, duly appointed and qualified, and that he employed counsel to represent them in said action; that the counsel so employed filed, in their names, a demurrer to the complaint; and the de-

murrer being overruled, he subsequently filed an answer for them, on which the cause went to trial. Under the decree rendered therein the defendant McDonald purchased; and if the Court acquired jurisdiction of the persons of the plaintiffs by reason of the above recited facts, it is clear that McDonald has acquired whatever title they then had. On the other hand, if they are not bound by the decree, for a want of jurisdiction in the Court over their persons, the title is still in them, and they are entitled to recover, unless the action is barred by the Statute of Limitations.

Section nine of the code provides that "when an infant is a party, he shall appear by guardian who may be appointed by the Court in which the action is prosecuted, or by a Judge thereof, or a County Judge;" and the next section provides on whose motion the guardian may be appointed. Section twenty-nine prescribes the method of serving the summons on an infant defendant, to wit: If he be under the age of fourteen years, by delivering a copy "to such minor personally, and also to his father, mother, guardian, or if there be none within the State, then to any person having the care or control of such minor, or with whom he resides, or in whose service he is employed;" and "in all other cases to the defendant personally." If these provisions were alone to be appealed to, it would be plain enough, that the Court could acquire no jurisdiction of the person of an infant defendant without a personal service of the summons. The Court has no power, on the motion of any one else, to appoint a guardian *ad litem* for a minor above the age of fourteen, until after service on the minor, as is apparent from section ten, which authorizes him, if above the age of fourteen, to make his application for the appointment of the guardian *ad litem*, at any time within ten days *after the service of the summons;* and until he shall have

neglected to apply within that time, no one else can make the application. It is not for us to inquire into the motives of the Legislature for requiring a personal service on an infant of tender years. It is sufficient that the statute expressly requires it; and it is our duty to see that the law is obeyed in this respect, without criticising the reasons for its enactment. But it is not difficult to perceive very sufficient reasons for this provision, founded on the vigilant care which the law exercises over minors and their estates. Children are generally under the care or control of relatives or friends, who feel an interest in their welfare; and a personal service or process on a minor increases the chances of protecting his rights, and diminishes the opportunity for fraud and collusion in the disposition and management of his estate. The general guardian may, possibly, be himself a party to a contemplated fraud on the minor, or may be culpably neglectful of his duties, in either of which events the summons served personally on the minor, and which may, and very probably would, fall into the hands, or attract the notice of the friend or relative having the custody of his person, and who is presumed to feel an interest in his affairs, might possibly be the means of preventing a wrong. In a majority of cases the practical effect of personal service on a minor is to give notice of the action to the actual custodian of his person; and this was, doubtless, the chief motive for requiring such service. There may be very satisfactory reasons why the general guardian should not be allowed to defend for the minor. He may be incompetent to conduct an important litigation, or he may be liable to a suspicion of fraud or collusion, or so negligent as to render him an unfit person to prepare the defense. In such cases the personal service on the minor may be the means of bringing these facts to the attention of the Court, and thus securing the appointment of a proper guardian to conduct the defense. But by section sixteen of the Act to provide

for the appointment and prescribing the duties of guardians it is provided, that the guardian "shall appear for and represent his ward in all legal suits and proceedings, unless where another person is appointed as guardian or next friend."

In *Gronfier* v. *Puymirol*, 19 Cal. 629, a general guardian appeared and defended the action for his ward, on whom there had been no service of process, and without having been appointed guardian *ad litem* by the Court in which the action was pending; and this Court held the proceedings to be valid, and that the ward was bound by the judgment. The decision is founded on the provision of section sixteen of the Act above quoted, which was held to authorize an appearance for the ward by the general guardian, when no guardian *ad litem* had been appointed. But the attention of the Court does not appear to have been called to the provisions of the code requiring a personal service on the minor, as affecting the question of jurisdiction. If service on the minor be shown, it cannot be doubted that the general guardian may appear for and represent him in the action, unless another be specially appointed for that purpose. But, as already stated, one of the principal ends to be subserved in requiring service on the minor, is to bring the matter to the attention of his friends, relatives, or custodian, so that they may have the opportunity to show that the general guardian is not a fit and proper person to represent him in the litigation. This object might, and in many cases would be wholly defeated if no service on the minor was required before the general guardian was authorized to appear for him. After service on the minor, if no one appears within the proper time to apply for the appointment of a guardian *ad litem*, the presumption is that there is no objection to an appearance on his behalf by the general guardian. But, as I construe these provisions, and in view of the policy which obviously dictated them, the general guardian has no au-

thority to appear for his ward in the action until after the latter shall have been served with process, and until the time shall have elapsed within which an application may be made by the minor, or in his behalf, for the appointment of a guardian *ad litem,* to wit: ten days after the service. In so far as the decision in *Gronfier* v. *Puymirol* contravenes this proposition, it ought, in my opinion, to be overruled.

I am not, however, to be understood as holding that if a minor be a non-resident, so that he cannot be personally served, the service may not in that case be made by publication of summons, as in other cases in which the service by publication is substituted for personal service. My conclusion on this branch of the case is that the plaintiffs are not bound by the decree in the case of Augusta S. Smith and F. C. Smith et als., because they were not served with the summons.

But the defendants claim, on the authority of *Hahn* v. *Kelly,* 34 Cal. 391, that all the presumptions are in support of the decree, and that in a collateral action it cannot be shown by proof *dehors* the record, that there was no service of summons on the present plaintiffs. The record, however, in that action is not before us on appeal. The Court finds it as a fact that no summons issued and none was served on the plaintiffs, and, for aught that appears, the fact may have appeared on the face of the record itself. This is an appeal on the judgment roll alone, and we must presume that there was sufficient competent evidence to support the findings. The decree against the plaintiffs was absolutely void, and not merely voidable as to them, and their acquiescence in it, for a time after reaching their majority, does not estop them. Nor is their claim barred by the Statute of Limitations, upon the facts found by the Court.

I think, therefore, that the judgment should be reversed, and cause remanded for a new trial.

Points decided.

Mr. Justice TEMPLE did not take part in either of the fore-going opinions.