[L. A. No. 3238.   Department Two.—March 18, 1914.]

## SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

TAXATION—LEASEHOLD INTEREST IN PROPERTY OF STATE—WHETHER MAY BE ASSESSED.—A leasehold interest in submerged lands which belong to the state cannot be taxed to the lessee.

ID.—LEASEHOLD INTEREST—WHETHER PROPERTY UNDER FISCAL LAWS.—A leasehold is property under certain circumstances and for certain purposes, but it is not property for purposes of taxation under our revenue and fiscal laws, notwithstanding the fee is owned by the state and hence is not taxable.

ID.—OWNER OF FEE—WHETHER OWNER OF ENTIRE ESTATE FOR PURPOSES OF TAXATION.—Where land is leased, the owner of the fee may fairly be deemed to be the owner of the whole estate for purposes of taxation.

ID.—LEASED PREMISES—ONE ASSESSMENT OF ENTIRE ESTATE.—Land held under an ordinary lease for years, giving the right to hold the property for usufructuary purposes only, is subject to but one assessment of the entire estate in the land against the owner of the fee. The assessment should not include the value of both of the estates for years and the remainder or reversion.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

A. S. Halstead, F. A. Waters, Wilfred M. Peck, and W. F. Palmer, for Appellant.

John W. Shenk, City Attorney, and Myron Westover, Deputy City Attorney, for Respondent.

HENSHAW, J.—Appellant is the tenant of certain lands under a lease from the city of Long Beach, which lease acquires validity through a ratifying act of the legislature. It is, in legal contemplation, a lease by the state of certain of its tide and submerged lands. (*San Pedro L. A. etc. Co.* v. *Hamilton,* 161 Cal. 610, [37 L. R. A. (N. S.) 686, 119 Pac. 1073].) The city of Los Angeles assessed this leasehold and levied a tax thereon which by appellant was paid under protest. In due time appellant brought its action for the recovery of the tax. A general demurrer to its complaint was sustained and from the judgment which followed this appeal is taken, presenting the single question whether under the laws of this state it is contemplated that leasehold interests, such as this, may be taxed to the lessees. No question is here involved of the right to tax improvements placed upon the leasehold, as in *San Francisco* v. *McGinn,* 67 Cal. 110, [7 Pac. 187]. The question is limited solely to the right to tax the leasehold itself.

Respondent cites certain sections of the constitution and of the codes which it argues support the assessment in question. The constitution of the state, article XIII, sections 1 to 10, is referred to. These constitutional provisions declare that all property, not exempt under the laws of the United States, with other exceptions, including property belonging to the state, or to any county or municipal corporation within the state shall be taxed in proportion to its value. The Political Code, section 3617, defines property as including "all other matters and things, real, personal and mixed, capable of private ownership"; and the term real estate as including "the possession of, claim to, ownership of, or right to the possession of land." Section 3820 of the same code provides that: "The taxes on all assessments of possession of, claim to, or right to the possession of land, shall be immediately due and payable," etc., and the following section declares that "the assessor may collect the taxes by seizure and sale of any personal property owned by the person against whom the tax is

assessed, or if no personal property can be found, then the assessor may collect the taxes by seizure and sale of the right to the possession of, claim to or right to the possession of the land." Upon these provisions respondent argues that a leasehold is an estate in land, involving and including the right of possession to land which may be designated real estate and is assessable for purposes of taxation, and it supports its argument by citation of authority such as the following from Judge Cooley on Taxation, page 635: "It is entirely competent to provide for the assessment of any mere possessory right in lands, whether they are owned by the government or by private individuals, as well as for any inchoate right to land which has been bought and in part paid for"; and this language from 28 Cyc. 1684: "While ordinarily public property, including property owned by the municipality itself, is not taxable by the municipality, yet such property is ordinarily taxable in the hands of a grantee, or lessee, or where the municipality has no present interest but only one to become vested in the future." And, finally, respondent makes reference to the repeal of section 3887 of the Political Code, which provided that "the mortgagor or lessor of real estate is liable for the taxes thereon," as implying that the lessor is no longer liable but that the lessee is liable for the taxes upon his leasehold interest.

It may be and indeed must be conceded that a leasehold under certain circumstances and for certain purposes is property. The real question is whether, under our revenue and fiscal laws, it is property for the purposes of taxation. Nothing in these laws, it is to be observed, so expressly declares. The declarations to the effect that the term "real estate" includes the possession of or right to the possession of land may well be construed to mean such possessions as are held under an assertion of the ownership of the fee, or such possessions as in time may ripen into a fee. Not only may the term be thus construed, but by the taxing officers of this state, by the courts of this state, as well as, generally speaking, by the courts of other states, such is the construction given to like language. Thus, in 1 Tiffany on Landlord & Tenant, 838, it is said: "In this country the statutes imposing taxes upon land, as on other property, are framed on the theory that the owner of the property is to pay the taxes, and the

owner of a reversion in land—the landlord, is alone regarded as the owner for this purpose, the tenant being looked upon merely as a temporary occupant." 2 Cooley on Taxation, page 822, declares to the same effect; and also 2 Underhill on Landlord & Tenant, section 598; while in 37 Cyc. 790, it is declared to be the general rule that property under lease for the term of years is taxable to the owner and not to the tenant. The reason for this rule is that the possession of the tenant is the possession of the owner. The tenant has no title to the property, and merely has the use thereof, and it is no more divisible for purposes of taxation than are a life estate and remainder in fee. (See, also, 24 Cyc. 1074; *Chicago* v. *People,* 153 Ill. 409, [29 L. R. A. 69, 38 N. E. 1075] ; *Boston etc. Co.* v. *Commonwealth,* 193 Mass. 387, [79 N. E. 827].)

Both parties to this controversy rely upon the decision of this court in *Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140, [20 L. R. A. (N. S.) 211, 99 Pac. 483], and the case therefore demands consideration. The assessment there contested was against the Graciosa Oil Co. as the owner of property described as "mining rights and privileges under lease made by L. Harris." The contention of the oil company was, first, that the mining rights and privileges affected by its lease had been assessed to Harris, the owner of the fee. This, by the trial court, was found not to be true, and that therefore there was no double assessment. The second contention was—and that was upheld by the trial court—that "the mining rights and privileges" granted by the lease were not taxable or assessable separate from the land, and that the lease did not create a separate taxable interest in the land, or justify a separate assessment of the right granted. This court declares:

"It is no doubt the general rule, regarding land held under an ordinary lease for years giving the right to hold the land for usufructuary purposes only, that, in the absence of contrary statutory provisions, there is to be but one assessment of the entire estate in the land, and that this assessment should include the value of both the estate for years and of the remainder or reversion. (27 Am. & Eng. Ency. of Law, p. 678; *Chicago* v. *People,* 153 Ill. 409, [29 L. R. A. 69, 38 N. E. 1075] ; *State* v. *Mississippi B. Co.,* 109 Mo. 253, [19 S. W. 421].) Section 3887 of the Political Code recognized this rule and provided that "the mortgagor or lessor of real estate is

liable for the taxes thereon." This section was repealed in 1880, but, so far as we are advised, the practice of making but one assessment of such land and covering therein the entire value of all interests and estates, has been uniformly followed in this state, since its repeal as well as before.

With respect to ordinary leases for usufructuary purposes there are good reasons for this practice. Except when held for speculative purposes, the value of land usually depends on the value of the use and occupation, and consists of a sum equivalent to a principal which, at the rate of interest usual upon safe investments, will bring a net annual income equal to that which the land will produce. The lessor or land-owner annually receives a sum as rent which he deems the equivalent of this annual income, or of the value of the use of the land to him, and therefore he enjoys the entire bene-ficial interest in the premises, including the value of the lease-hold as well as of the fee. There are exceptional cases, due to the sudden rise in rental values, where this is not the case. But general rules in regard to taxation must be made to fit the usual conditions and not the exceptional ones, and statutes are to be construed with this fact in view. Since 1880 there has been no express statutory provision on the subject, but we think that, as to such leasehold estates, the owner of the fee may fairly be deemed to be the owner of the whole estate for purposes of taxation."

The opinion then proceeds to construe the difference between ordinary leases conveying the usufructuary right and mining leases which contain the right to impair and destroy the free-hold and to carry it away, and concludes that the right of the lessee under such contracts "is more than that of the ordinary lessee. It is of a different character and for a different pur-pose. He has no right at all to the usufruct of the soil. His right extends to the extraction of a certain part of the sub-stance of the land itself, to its permanent separation and removal and its conversion to his own use. The whole object of the contract is to effect, if not technically, a sale and con-veyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another." Then the opinion points out that the code recognizes such rights and privileges as a species of property in real estate. Under sec-tion 3617, subdivision 1, touching "the possession of, claim to,

ownership of, or right to the possession of land" it is said that the claim to "take this stratum from its place and then convert it to one's own use may well be termed a claim to land, although not accompanied by actual physical possession of the subterranean deposit." While under the second subdivision, where real estate is defined to include "all mines, minerals and quarries in and under the land" it is declared that clearly the oil company's interest in the land was of this character and, therefore, within the definition of the code, property clearly subject to taxation.

In the present case, however, it is to be observed that we are not dealing with a leasehold in mineral lands conveying the right to impair the freehold or to extract mineral wealth, nor are we dealing with any possessory right which could possibly develop into an ownership. The appellant here holds from the state a lease of lands, with title to which the state itself could not part. Originally they were submerged lands lying far below the surface of the ocean. The covenants of the lease required a large expenditure of money in bulkheading and filling these lands, to the end that they may become valuable for purposes of navigation and commerce, and by the terms of the lease the use of the land is limited to public purposes. The consideration has been paid the state by the appellant and it is as truly in the form of rent as though the state had exacted an annual payment of money which it should devote to the same purpose of reclamation. At the end of the term of the lease the state acquires all of the property, with the betterments and improvements pertaining to it. Therefore, because of the radical differences in the character of the leasehold estates, the Graciosa case cannot be considered as authority for the imposition of the tax upon this leasehold. Its authority goes no further than to declare that leaseholds containing the right to extract valuable minerals are the subject of separate assessment from that of the freehold. But the general rule is in the Graciosa case laid down in consonance with the foregoing authorities, and it is that land held under an ordinary lease for years, giving the right to hold the land for usufructuary purposes only, is subject to but one assessment of the entire estate in the land against the owner of the fee. It is said that "this assessment should include the value of both the estate for years and of the

remainder or reversion." This last declaration, while suffi-
ciently true for the purposes of the case then under considera-
tion, is not strictly accurate. No assessor has the right to
assess and tax the leasehold interest if it be taxable at all
against the fee which belongs in the remainderman or rever-
sioner, for our laws are just and mandatory to the effect that
property shall be assessed against the true owner and in the
name of the true owner. (Pol. Code, secs. 3627, 3636.) And
if it be held that in general a leasehold is property hav-
ing a taxable value within our fiscal statutes, it must neces-
sarily follow that every assessment which "includes the value
of both the estate for years and of the remainder or rever-
sion," which is levied against the landlord, is void as being
an assessment against property not his own. The foundation
for the rule which ignores the leasehold and puts the assess-
ment of the whole estate upon the landlord, is that the lease-
hold, while property for certain purposes, yet for fiscal pur-
poses is not property at all; and as the tenant may not deny
his landlord's title, so his possession is but the landlord's pos-
session, and the value of that possesion, whatever it may be,
is therefore the property of the landlord and assessable against
him. The tenant's right to possession is always in subordi-
nation to the landlord's paramount right, and in the eye of
the law is no more separate property apart from the land-
lord's property than would be the landlord's permission to use
a part of his land for a private right of way. The true reason
therefore why, in general, leaseholds conveying the right to
possession with the usual usufructuary rights are not assess-
able against the tenant is that they are not, for fiscal purposes,
regarded as property.

Is the case at bar to be distinguished in this respect from
the cases coming within what, in the Graciosa case, has been
designated this "general rule?"

The only fact which differentiates this case from the ordi-
nary case of a lease by a private landlord to a private tenant
is that the landlord in this case is the state of California.
Though the lease here under consideration originated in the
efforts of one or more municipalities to convey such an in-
terest in these lands, the sole and whole validity which these
leases possess is drawn from the validating act of the state
of California. (Stats. 1907, p. 987.) We repeat, if this had

been the case of a lease by a landlord who was a private person, unquestionably we would have heard of no attempt to assess this leasehold interest. But because the property leased is the property of the state, and therefore not subject to taxation, it is here sought to reach the leasehold interest as assessable and taxable property. Authority for so doing, it is declared, exists not alone in the citation of authority above given, but in other decisions of our own state, which, therefore, require brief consideration. The first of these cases is *People* v. *Shearer,* 30 Cal. 645. The facts were that the application for confirmation of a Mexican grant had been finally rejected. Congress passed a relief act, providing for the entry of these lands and the subsequent purchase from the government, giving preference to *bona fide* occupants in possession. While the land was in this condition certain of these occupants, settlers, and entrymen delayed procurement of their patents, hoping thus to escape taxation. The petition was in mandate to compel the assessor "to assess all claims to, or possession of, or rights of possession to, or ownership of, any of said lands in the manner required by the Revenue Acts." The decision of the court was that these entrymen and settlers held a possession which it was expected would ripen into an ownership of the fee. It was a possession designed to ripen into such ownership, and was therefore a claim to, or right of possession to lands, subject to taxation, notwithstanding the fact that at the time the fee of the lands was in the United States government. Here it is to be remembered that no such possessory right is claimed by this appellant, but its possessory right is that of the state and in subordination to the laws of the state. By no possibility could this possession ripen into an ownership of the fee. *People* v. *Frisbie,* 31 Cal. 146, presented a similar question. The assessment, it was asserted, was upon a mere claim to possession. There was not there involved a leasehold interest, but a possession under entry which was designed to ripen into title. In *People* v. *Black Diamond Coal Co.,* 37 Cal. 54, defendant was in possession of land of the United States, not under lease, but under mineral claim. It was asserting and actually exercising the right to remove valuable mineral—coal—from the land. It was this right of possession, the right to remove a portion of the freehold (as in the Graciosa case) for which the defendant was taxed. In

*Los Angeles* v. *Los Angeles Water Works,* 49 Cal. 638, the facts, briefly, were these: The city of Los Angeles, owning water, water-rights, water-works and a distributing system, "conceded to defendant the use and possession of the water and water-works for a term of years, with the right to sell the water and enjoy for his own use the rents and profits, with the right to lay additional pipes, the city, at the expiration of the term, to pay the party the value of the improvements made. The assessment attacked was not upon any leasehold. It was upon the property of the defendant. The contention was that the property was the city's property, and that defendant was but the agent administering the property. The decision was that the defendant held "an interest in the property assessed which is subject to taxation." Here, clearly, there is no declaration that a leasehold as such is assessable, and to the contrary it does appear, as in the Graciosa oil case, that the right of possession embraced the right to sell a part of the freehold—the water itself—as in the Graciosa case it was to take and sell the oil. The next case relied on is *San Francisco* v. *McGinn,* 67 Cal. 110, [7 Pac. 187]. The city of San Francisco had leased to defendant a portion of one of its school lots. The defendant made improvements upon this leased land by the erection of a substantial four-story building. The assessment was upon the buildings and improvements, which defendant had placed upon the land. There was no assessment upon the leasehold, and the decision of this court declared that, for purposes of revenue, improvements placed upon such leased land were subject to taxation. In the case at bar it is to be noted that there is no assessment whatsoever for or on improvements. It is an assessment upon the leasehold alone. *Bakersfield etc. Oil Co.* v. *Kern County,* 144 Cal. 148, [77 Pac. 892], is analogous to the Black Diamond Coal Co. case. It holds that the interest, right of possession, and claim to possession of those who entered upon the lands of the United States under its mineral laws are taxable to the locators or their successors. The reason for this is quite plain and has heretofore been set forth.

No one of these cases meets the contention advanced by respondent. Nor are we inclined, without an express mandate of the law, to hold that this lease, differing in no respects from a lease which might have been made by a private person, is to

be declared property subject to taxation because the land-lord—the state—may not be taxed. The construction of our fiscal laws to the contrary has obtained for a great many years, and, as it is pointed out in the Graciosa case, the practice of the assessors was not modified by the repeal of section 3887 of the Political Code. If, under these circumstances, we are to hold that this leasehold is property within the meaning of our fiscal laws, every leasehold must equally be declared to be property subject to assessment and taxation. The immediate result of this would be to force a declaration that in every case where a lease is in existence, the assessment against the owner for the full value of the property, without an assessment against the lessee of the value of his leasehold is void. Such a disturbance of our fiscal system is not to be contemplated, saving under the plain mandate of the legislature, and no such mandate has as yet been pronounced.

The judgment appealed from is therefore reversed, with directions to the court below to overrule the demurrer to plaintiff's complaint and to permit the defendant to answer thereto if it shall be so advised.

Lorigan, J., and Melvin, J., concurred.