[L. A. No. 4600.    In Bank.—February 25, 1919.]

## SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[1] ESTATE FOR YEARS—LEASEHOLD INTEREST IN STATE TIDE-LANDS.— In view of sections 654, 701, and 761 of the Civil Code, the interest of a person under a lease of tide-lands from the state is an estate for years, and is, therefore, property.

[2] TAXATION—PROPERTY NOT EXEMPT IN PROPORTION TO VALUE—CONSTITUTIONAL PROVISION MANDATORY.—Section 1 of article XIII of the constitution, which provides that all property in the state not exempted by such section shall be taxed in proportion to its value, is, in view of section 22 of article I of the constitution, direct and mandatory.

[3] ID.—MODE OF ASCERTAINING VALUE—CONSTITUTIONAL PROVISION NOT SELF-EXECUTING.—Section 1 of article XIII, of the constitution is not self-executing, but imposes upon the legislature the duty of providing a mode whereby to ascertain the value of the property to be taxed.

[4] ID.—LEASEHOLD INTEREST IN STATE TIDE-LANDS—REAL PROPERTY FOR TAXATION PURPOSES.—In view of section 3617 of the Political Code, which declares that the term "property" includes all matters and things, real, personal, and mixed, capable of private ownership, and that the term "real property" includes the possession of, claim to, or right to the possession of land, and in view of section 819 of the Civil Code, which provides a leasehold estate carries to the possession of the land lease, a leasehold interest in tide-lands of the state is "real property," for the purposes of taxation.

[5] ID.—SEPARATE ASSESSMENT OF LEASEHOLD AND REVERSION—OWNERSHIP OF REVERSION BY STATE.—While it is true that the code makes no specific provision for separate assessments of leasehold and reversion to the lessee and the owner of the fee respectively, and the usual procedure is to assess the entire value of the land to the owner of the reversion, yet in a case where the state owns the reversion the private owner of the leasehold interest is not exempted from paying taxes upon his interest because the interest of the state is not taxable.

[6] ID.—POSSESSORY RIGHT IN PUBLIC LAND—PRIVATE PROPERTY FOR PURPOSES OF TAXATION.—A possessory right in public land is private property, and may be assessed for the purposes of taxation to the person in possession, although in point of law he may have no right as against the state or government owning the land.

[7] ID.—FILLING OF LEASED TIDE-LANDS—"FILL" NOT AN "IMPROVE-
MENT" FOR TAXATION PURPOSES.—The construction of a breakwater
of rocks upon leased tide-lands belonging to the state and the filling
in of the submerged land by depositing thereon earth and sand to
a depth or thickness sufficient to raise the level of the surface
above the line of high tide is not, in so far as the fill is concerned,
an "improvement" within the meaning of section 3617 of the
Political Code, which defines improvements for the purposes of
taxation, but constitutes a part of the realty, the fee of which
being in the state, is not subject to assessment.

[8] ID.—ASSESSMENT OF BREAKWATER OF ROCKS—BLENDING WITH UN-
LAWFUL ASSESSMENT OF FILL—VOID ASSESSMENT.—The assessment
of a breakwater of rocks constructed upon leased tide-lands belong-
ing to the state is void where the same is included with an assessment
of a fill, which is not legally assessable.

[9] ID.—BLENDING OF LAWFUL AND UNLAWFUL ASSESSMENTS—ENTIRE
ASSESSMENT VOID.—If the different parts of an assessment, lawful
and unlawful, are blended together in one indivisible assessment,
the entire assessment is illegal.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Frank G. Finlayson, Judge. Affirmed in
part, reversed in part.

The facts are stated in the opinion of the court.

Albert Lee Stephens, City Attorney, Jess E. Stephens,
Assistant City Attorney, and Wm. P. Mealey, Deputy City
Attorney, for Appellant.

E. E. Bennett, A. S. Halsted and Dana T. Smith for
Respondent.

Goodwin & Morgrage, *Amicus Curiae.*

VICTOR E. SHAW, J., *pro tem.*—The plaintiff is lessee of
certain tide-lands situated in the city of Los Angeles and be-
longing to the state. The city assessed this leasehold estate
and levied a tax thereon, which plaintiff paid under protest
and in due time brought this action to recover the same.
Judgment went for plaintiff, from which the defendant
appealed.

On a hearing heretofore had of the case, it was considered
in connection with L. A. No. 4504, entitled *San Pedro, Los*

*Angeles & Salt Lake R. R. Co.* v. *City of Los Angeles* (Cal.), 179 Pac. 390, which, as to the power of the municipality to assess a leasehold estate in such property for the purpose of levying a tax thereon, involved the same questions. The latter case, however, had been before the court on a former appeal prosecuted by the plaintiff from a judgment in favor of the city upon sustaining its demurrer to the complaint, with the result that the judgment was reversed. (See *San Pedro etc. R. R. Co.* v. *City of Los Angeles,* 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071].) Upon going down of the *remittitur* the city was permitted to file an answer, and upon trial a judgment was entered in favor of the plaintiff, from which the city appealed. The hearing of the two cases thus considered together resulted in an affirmance of L. A. No. 4504, based solely upon the ground that the former decision thereof, as reported in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], constituted the law of the case. As to the case now under consideration, however, the court took a different view of the question involved and reversed the judgment rendered against the city. Thereafter the petition of the city of Los Angeles, as appellant in L. A. No. 4504, for a rehearing was denied, thus finally disposing of the subject of litigation involved therein. A like petition for a rehearing was presented by the plaintiff in L. A. No. 4600, being the case now under consideration, which was granted upon the sole ground that the court had failed to consider the question as to the assessment made of certain alleged improvements upon the leasehold. By an order made granting said rehearing, the court restricted further argument to the question alone of the validity of the assessment of the alleged improvements. (See Minutes, Sept. 11, 1918, 56 Cal. Dec., No. 2969.)

[1] The question to which the court on the former consideration of the case addressed itself and to which the chief argument of counsel was directed was whether the laws of this state authorize the taxation of leasehold interests in the tidelands of the state. Upon this point, holding that municipalities have such power, we adopt the opinion of Mr. Justice Sloss, filed at the former hearing of the appeal, which is as follows:

"That a leasehold interest is property is a proposition not open to dispute. 'The thing of which there may be ownership is called property.' (Civ. Code, sec. 654.) Interests in real property are called 'estates.' (Civ. Code, sec. 701.) They

are classified by section 761 of the same code as (1) estates of inheritance, (2) estates for life, (3) estates for years, (4) estates at will.  The interest of the plaintiff under the lease from the state is an estate for years.  There may be ownership of such estate.  It is, therefore, property.

"Is it property for the purposes of taxation?  Our constitution declares (art. XIII, sec. 1) : 'All property in the state except as otherwise in this constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law. . . . The section exempts property belonging to the state, and certain other kinds of property, not including interests like the one here involved.  [2] With respect to all property not so exempted, the provision of the constitution that it shall be taxed in proportion to its value, to be ascertained as provided by law, is direct and mandatory.  (Const., art. I, sec. 22.) The provision for the taxation of all property not exempt is repeated in section 3607 of the Political Code.

[3] "The constitutional provision is not self-executing. It imposes upon the legislature the duty of providing a mode whereby to ascertain the value of the property to be taxed. (*McHenry* v. *Downer*, 116 Cal. 20, 24, [45 L. R. A. 737, 47 Pac. 779.]  See *De Witt* v. *Hays*, 2 Cal. 463, 468, [56 Am. Dec. 352].)  [4] If, then, the legislature had not provided any mode for the assessment of leasehold estates, it might well be said, as was said in the former opinion, that such an estate is not 'property for the purposes of taxation' under our fiscal laws.  But there does not appear to be any such deficiency in our revenue laws.  Section 3617 of the Political Code declares that the term 'property' includes 'all matters and things, real, personal, and mixed, capable of private ownership,' and that the term 'real estate' includes 'the possession of, claim to, ownership of, or right to the possession of land.'  A leasehold estate carries a right to the possession of the land lease.  (Civ. Code, sec. 819.)  It is, therefore, real property within the above definition.  Other sections of the Political Code provide for the listing of real property, the description and valuation thereof, and contain a complete scheme for the assessment of the property, and the levy and collection of the taxes.  This scheme is as readily adaptable to an estate for years as to a freehold estate.

**[5]** "It is true that the code makes no specific provision for separate assessments of leasehold and reversion to the lessee and the owner of the fee, respectively. The usual procedure in this state, as elsewhere, has been to assess the entire value of the land to the owner of the reversion. Such assessment covers the value of the leasehold as well as of the reversionary interest, the sum of the two being comprised in the value of a complete ownership of the land. (*Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140, [20 L. R. A. (N. S.) 211, 99 Pac. 483].) The state thus receives the tax upon every interest in the land, and the requirement of the constitution and of section 3607 of the Political Code is satisfied. Where, however, the state owns the reversion, its reversionary interest, like all property owned by it, is exempt from taxation. In such a case it can- not be said that the private property right of the lessee is taxed through the medium of the taxation of the interest of the owner. Still less can it properly be said that because the interest of the state is not taxable, the private owner of a lease- hold interest should be exempt from paying taxes upon the property that is owned by him.

"An illuminating discussion of the question is found in *Trimble* v. *Seattle,* 231 U. S. 683, [58 L. Ed. 435, 34 Sup. Ct. Rep. 218], a case which was not called to the attention of the department on the former appeal. The supreme court of Washington had upheld an assessment on certain leaseholds of tide-lands owned by the state. The assessment of the lease- holds was authorized by statutes enacted after the execution of the leases by the state. A writ of error was granted to re- view the judgment of the state court. The plaintiff in error contended that the leases imported an obligation that the lessor should pay all taxes and assessments, and that the federal con- stitution prohibited the impairment of this contract by a sub- sequent law. The supreme court of the United States held that no such obligation was included in the lease, saying:

" 'In ordinary cases the whole property is taxed and which party shall bear the burden is not a matter of public concern. But when the state makes the lease, the supposed obligation would be an obligation not to tax—a restriction of public im- port not lightly to be imposed (citing cases). It is urged that to deny the state's obligation discriminates unconstitutionally against this class of lessees, since all others are free from the burden. But that is not true. Whether landlord or tenant

shall pay a tax is a matter of private arrangement, and the practice one way or the other has no bearing on the matter. The argument from inequality really works the other way. If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee. When an interest in land, whether freehold or for years, is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property and therefore is subject to being taxed.'

"In *Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140, [20 L. R. A. (N. S.) 211, 99 Pac. 483], a separate assessment of a leasehold interest to the lessee was upheld. The case was discussed at some length in the opinion on the former appeal in the first of the cases before us, and it was pointed out that the lease in the Graciosa case carried with it a right to take a part of the substance of the land itself. There is, no doubt, a distinction between the grant of such right and an 'ordinary lease for usufructuary purposes,' and it may be conceded that the decision in the Graciosa case is not a controlling authority in favor of the appellant's contention here. On the other hand, that decision does not, as suggested by the former opinion dealing with the rights of the parties to the present appeals, support the respondent's position that its leasehold interest is not taxable. What was said in *Graciosa Oil Co.* v. *Santa Barbara* regarding the mode of taxing property leased by one private individual to another had no reference to a case like this, where the lessor is a governmental agency whose property is exempt from taxation. The opinion fully recognizes that, in the usual case, the assessment to the owner of the fee includes the value of both the reversion and the leasehold interest, and that, under such conditions, both interests are assessed, and the mandate of the constitution is followed.

[6] "The principle that a possessory right in public land is private property, and that it may be assessed for purposes of taxation to the person in possession, although in point of law he may have no right as against the state or government owning the land, has long been settled in this state. (*People* v. *Shearer,* 30 Cal. 646, 655; *People* v. *Frisbie,* 31 Cal. 146; *People* v. *Cohen,* 31 Cal. 210.) The first two of these cases are referred to in the decision of the first appeal in *San Pedro etc. R. Co.* v. *Los Angeles,* 167 Cal. 425, [52 L. R. A. (N. S.) 991,

139 Pac. 1071], and they are sought to be distinguished upon the ground that the possession of the claimant was one designed to ripen into an ownership of the fee, under the land laws of the United States. But a careful examination will show that this ground of distinction is not tenable. In the Shearer case (30 Cal. 646), the court pointed out that the occupant had not made the payment which was necessary to vest in him any legal or equitable right as against the government. He was, however, in possession, and his right as possessor was held to be property subject to taxation. The court said: 'The possession itself of the 'public lands and the improvements thereon, whether by naked trespassers or those who claim in addition a right of pre-emption, as to everybody except the United States, have always in California, and in most, if not all, of the new states, been regarded as valuable property interests. The transfers of such possession and improvements have always been held to constitute a valuable consideration for a promise. The possessors often derive and enjoy large revenues from them. Contracts for such possession, and rights growing out of them, are constantly recognized, protected, and enforced by the courts, and, in this state, a very large share of the litigation in the courts maintained by means arising from taxation grows out of this very class of rights. . . . Such possession of the public lands, and the improvements put upon them, are, therefore, recognized and protected as a valuable species of property in the possessor.' It was further said that these possessions 'exist wholly independent of pre-emption laws, without any pre-emption right or intention to claim such right, and always anterior to the existence of those rights. . . . And this property is property in the citizen or inhabitant having possession, and not in the United States. This property, so recognized and protected, in our judgment is clearly not exempt from taxation.' (Page 659.) And, accordingly, it was held that such possessory rights should be assessed and that 'the value of the possessory right should be put down and not the value of the land itself,' as the basis of the assessment for taxation. A mandate was issued to the assessor to compel him to do so.

"This conclusion was reached regardless of whether the person in possession was intending to claim as pre-emptioner or homesteader, or whether his possession could ever have ripened into a fee. Nor was the decision in *People* v. *Frisbie,* 31 Cal.

146, put upon any such theory. Each of these cases was decided upon the ground that possession of land, with or without right or expectation of right or title from the government, was a species of property in the possessor, and as such subject to taxation. The inability to tax the fee vested in the public is, therefore, no obstacle to the taxation of the possessory right, whatever its nature may be. If a bare possession by the sufferance of the real owner is subject to taxation where the estate of the real owner is exempt because the state or the United States is such real owner, it is impossible to uphold the proposition that the estate of one holding a valid estate for years under lease from the state is not subject to taxation. That estate is not included in any assessment to the landlord or owner of the estate in remainder.

"We do not agree with the suggestion made in the closing paragraph of the decision in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], that a holding that the plaintiff's leasehold interest is subject to assessment and taxation would make void every assessment against the owner of land subject to a lease without an assessment against the lessee of the value of his leasehold. As has already been said, in the ordinary case the value of the leasehold is included in the value assessed to the owner of the fee. What the constitution and the law require is that all property shall be taxed in proportion to its value. And this is done when the whole value of the land is assessed to the owner of the fee. Section 3628 of the Political Code provides that no mistake in the name of the owner of real property shall render the assessment thereof invalid. The validity of the assessment would not, therefore, be affected by the fact that the values of the several estates in the land are united in a single assessment in the name of the owner of one of such interests."

Upon the views thus expressed, it follows that the decision in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], must be deemed overruled.

[7] The improvements upon the leasehold were assessed at the sum of $92,850, upon which a tax of $1,151.35 was levied. As described in the assessment-book, the property assessed was: "Improvement on a tract of land leased from Long Beach city to S. P., L. A. & S. L. R. R. Co., dated October 2, 1905, for 46 years, for land and water rights in 61.90 acres, being that part of fill lying south of Terminal Island and north of

strip reserved by city, in section 18, T. 5 S., R. 13 W." The court found, as alleged in the answer of defendant, that after the execution of said lease, but prior to the assessment, plaintiff constructed a breakwater of rocks upon said premises and along the southerly line thereof, and filled or caused to be filled with earth and sand the lands lying between the mainland and said breakwater, by dredging in such manner that all of the lands described in said lease were at the time of such assessment no longer submerged, but dry lands lying above the line of high water. It thus appears that the improvements consisted of a stone retaining-wall or breakwater built of rock and the filling in of the submerged land by depositing thereon earth and sand to a depth or thickness sufficient to raise the level of the surface above the line of high tide. In its supplemental brief, counsel for the city, which is the appellant here, concede that respondent is correct in its contention that the fill so made upon the land is not an improvement within the meaning of section 3617 of the Political Code, which defines improvements as "all buildings, structures, fixtures, fences and improvements erected upon or affixed to the land, except telephone and telegraph lines." We are in full accord with this agreed view of the subject of the parties. The fill was not an "improvement *erected upon or affixed* to the land," but, when made, was a part of the realty—indeed, it was the land itself, the surface of which was changed by bringing it to a higher grade. Surely, it could not be said the tenant would be entitled to remove this fill at the expiration of the lease by virtue of a provision contained therein to the effect that it might remove all improvements made. In the case of *Kern Valley etc. Co.* v. *County of Kern,* 137 Cal. 511, [70 Pac. 476], the court had under consideration the question as to whether the embankments and levees constructed along the margin of a canal constituted an improvement within the meaning of section 3617 of the Political Code, or was a part of the canal. The court said: "We do not think this definition (section 3617) can be said to include embankments or banks forming the margin of the canal, and it was therefore proper to include the levees as part of the canal." So here, we think the fill was not an improvement within the meaning of the section, but when made constituted the realty itself, the fee of which was in the state, and hence not subject to assessment.

While appellant concedes the fill is not subject to assessment, it insists that as an abstract proposition of law the breakwater constructed of rock is an improvement within the meaning of section 3617, and as such assessable for taxation. It is unnecessary to determine such question. The assessment was not merely for improvements upon the leasehold; hence we can indulge in no presumption that the assessor in making the assessment included therein only such property as was legally assessable. (*Western Union Tel. Co.* v. *Los Angeles,* 160 Cal. 124, [116 Pac. 564].) **[8]** It conclusively appears that the breakwater was not *separately* assessed, but included in the assessment with the fill, with which unlawful assessment it is indivisible. Therefore, conceding the breakwater to be assessable, the assessment thereof, as shown by the record, is so blended with the assessment of the fill that it renders the entire assessment void. (*State* v. *Central Pacific R. R. Co.,* 127 U. S. 1, [32 L. Ed. 150, 8 Sup. Ct. Rep. 1073], and *County of Santa Clara* v. *Southern Pacific Co.,* 118 U. S. 394, [30 L. Ed. 118, 6 Sup. Ct. Rep. 1132].) **[9]** "If the different parts, lawful and unlawful, are blended together in one indivisible assessment, it makes the entire assessment illegal." (*State* v. *Central Pacific R. R. Co.,* 127 U. S. 1, [32 L. Ed.150, 8 Sup. Ct. Rep. 1073].) Indeed, appellant recognizes this fact and concedes "that the judgment should be sustained in so far as the assessment upon improvements is concerned."

The judgment, in so far as it declares the assessment upon the improvements void, is affirmed, and in so far as it in effect adjudges the assessment of the leasehold estate void, is reversed, and the trial court is directed to modify the judgment in accordance herewith.

Sloss, J., Wilbur, J., Richards, J., *pro tem.,* and Angellotti, C. J., concurred.

MELVIN, J., Dissenting.—I dissent from that part of the foregoing opinion which readopts the opinion of Mr. Justice Sloss filed at the former hearing of the appeals, and I adhere to the views expressed in the opinion in *San Pedro etc. R. R. Co.* v. *Los Angeles,* 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], which has been the declared law of this state upon this subject for more than four years. That property rights have been acquired under the rule announced in that case and in

reliance thereon seems to me to be without the possibility of a doubt. Whether the state or its mandatories charge a lessee additional rental under the guise of a tax or merely by arbitrarily increasing the demand and still calling the exaction rent makes no difference, it seems to me. It is in either case a violation of the lessee's contract to enjoy land exempt from taxation for a certain stipulated payment. It cannot justly be said, therefore, it seems to me, that no property rights appear to have been acquired upon the faith of the ruling in the former appeal in L. A. No. 4504. The arguments which impel the application of the rule of "law of the case" in that appeal seem to me equally to apply to this. The constitution and statutes as interpreted by this court form a part of every contract, and I cannot see how this court may now violate the obligation of one contract made and partly performed on the faith of an interpretation now held to be erroneous, while at the same time an exactly similar contract is pronounced inviolable because of "the law of the case."

One reason for the "rule of property" is the presumed dependence upon judicial decisions. In 11 Cyc. 755, the principle is thus stated: "Where judicial decisions may fairly be presumed to have entered into the business transactions of a country and have been acted upon as a rule of contracts and property it is the duty of the court, on the principle of *stare decisis,* to adhere to such decisions without regard to how it might be inclined to decide if the question were new. And this rule obtains, although the court may be of the belief that such decisions are founded upon an erroneous principle and are not sound, for when parties have acted upon such decisions as settled law and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract are of less importance than that the rule of property so established should be constant and invariable. So such a rule controls as to decisions involving questions of constitutional law and the construction and operation of statutes." The text is supported by a wealth of citation, including such cases as *Sacramento Bank* v. *Alcorn,* 121 Cal. 379, [53 Pac. 813], and *Smith* v. *McDonald,* 42 Cal. 484. That this rule should find application to the case here considered is emphasized when we remember that the lessee has spent large sums in the betterment of the property. It is a logical, indeed almost an inevitable, conclusion that the amount of these expenditures was

governed, in some degree, by the supposed exemption in favor of the plaintiff.

In the opinion of Mr. Justice Sloss, approved by the majority of the justices of this court, the following paragraph seems to me to be particularly erroneous:

" 'We do not agree with the suggestion made in the closing paragraph of the decision in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], that a holding that the plaintiff's leasehold interest is subject to assessment and taxation would make void every assessment against the owner of land subject to a lease without an assessment against the lessee of the value of his leasehold. As has already been said, in the ordinary case the value of the leasehold is included in the value assessed to the owner of the fee. What the constitution and the law require is that all property shall be taxed in proportion to its value. And this is done when the whole value of the land is assessed to the owner of the fee. Section 3628 of the Political Code provides that no mistake in the name of the owner of real property shall render the assessment thereof invalid. The validity of the assessment would not, therefore, be affected by the fact that the values of the several estates in the land are united in a single assessment in the name of the owner of one of such interests.' "

This reasoning takes advantage of a statute intended only to cover cases of *misnomer* and excuses that which, if the rest of the opinion is correct, is an absolute misassessment of property to the wrong owner, for the assessor knows in every case in which there is a landlord and a tenant that the leasehold and the reversion belong to different individuals. The opinion contains nothing which, in my judgment, logically overcomes the following portions of the opinion in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], written by Mr. Justice Henshaw and cited above: "No assessor has the right to assess and tax the leasehold interest if it be taxable at all against the fee which belongs in the remainderman or reversioner, for our laws are just and mandatory to the effect that property shall be assessed against the true owner and in the name of the true owner. (Pol. Code, secs. 3627, 3636.) And if it be held that in general a leasehold is property having a taxable value within our fiscal statutes, it must necessarily follow that every assessment which 'includes the value of both the estate for years and of the remainder or reversion,' which is levied

against the landlord, is void as being an assessment against property not his own. The foundation for the rule which ignores the leasehold and puts the assessment of the whole estate upon the landlord is that the leasehold, while property for certain purposes, yet for fiscal purposes is not property at all; and as the tenant may not deny his landlord's title, so his possession is but the landlord's possession, and the value of that possession, whatever it may be, is therefore the property of the landlord and assessable against him. The tenant's right to possession is always in subordination to the landlord's paramount right, and in the eye of the law is no more separate property apart from the landlord's property than would be the landlord's permission to use a part of his land for a private right of way. The true reason, therefore, why, in general, leaseholds conveying the right to possession with the usual usufructuary rights are not assessable against the tenant is that they are not, for fiscal purposes, regarded as property. . . . If, under these circumstances, we are to hold that this leasehold is property within the meaning of our fiscal laws, every leasehold must equally be declared to be property subject to assessment and taxation. The immediate result of this would be to force a declaration that in every case where a lease is in existence, the assessment against the owner for the full value of the property, without an assessment against the lessee of the value of his leasehold, is void. Such a disturbance of our fiscal system is not to be contemplated, saving under the plain mandate of the legislature, and no such mandate has as yet been pronounced.''

And in the future assessors may not keep their official oaths if they continue to assess leasehold interests to the owners of the fees. They cannot plead mistake and so take advantage of section 3628 of the Political Code, because they must know, as everybody knows, that commonly leaseholds and reversions belong to different individuals. I sincerely regret that in this later decision the majority of this court is thus disturbing our fiscal system.