Argued December 16, 1897; decided January 10, 1898.

## LADD *v.* CITY OF PORTLAND.

[51 Pac. 654.]

| 32 | 271 |
| 38 | 394 |

CONSTITUTIONAL LAW — CITY CHARTER — OBLIGATION OF CONTRACTS.—The provisions of a city charter that a street may be improved at the expense of the abutting property owners, and that when so improved it shall not be again so improved do not, after the owner has paid for an improvement, constitute a "contract" between him and the state that cannot be impaired or repealed by subsequent legislation.

"CONTRACT" DEFINED.—A "contract," within that clause of the federal constitution that prohibits legislation impairing the obligation of contracts, means a voluntary agreement of minds, upon a sufficient consideration, to do or not to do certain things.

From Multnomah: LOYAL B. STEARNS, Judge.

Suit by Wm. M. Ladd and others against the City of Portland to enjoin the collection of an assessment for improving a certain street. A demurrer to the complaint was sustained, and from a decree against them plaintiffs appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Frederick V. Holman.*

For respondent there was a brief over the name of *Roscoe R. Giltner,* with an oral argument by *Mr. William M. Cake,* city attorney.

MR. JUSTICE BEAN delivered the opinion.

This is a suit to restrain the collection of an assessment for street improvements. The facts, in brief, are that by article VI of the charter of East

Portland, adopted in 1870, the board of trustees was authorized and empowered to improve the streets and parts of streets within the limits of the city at the expense of the abutting property; but it was provided (section 27) that, when a street "has been once improved, under and by virtue of the provisions of this chapter, thereafter such street or part thereof is not subject to be again improved, but may be repaired": Laws 1870, page 156. Under the power thus delegated, the board of trustees of East Portland, in 1883, made a full improvement of Fifth street in front of plaintiffs' property by building to the established grade an elevated roadway thirty-six feet wide, with an elevated sidewalk twelve feet wide on each side thereof, and assessed the cost upon the abutting property, which assessment was duly paid by plaintiffs' predecessor in interest. Afterward, and in 1891, the cities of Portland, East Portland, and Albina were, by an act of the legislature, consolidated into one municipality, under the name of the City of Portland, and the several acts of incorporation of the respective cities repealed: Laws 1891, page 796. In 1893 (Laws 1893, page 810) the present charter of the City of Portland was passed, and the act of 1891 repealed, all vested rights being reserved. By chapter IX the council is given power and authority, whenever it deems it expedient, to improve any street or part thereof, and assess the cost on the abutting property. Under the authority thus granted, the common council, in 1894, proceeded to and did improve said Fifth street along and in front of the plaintiffs'

property, formerly improved under the East Portland charter of 1870, assessed the cost thereof against the abutting property, and was threatening to enforce its collection when this suit was brought.

Plaintiffs contend that the provisions of the act of 1893, authorizing such improvement at the expense of the owners of abutting property, are unconstitutional and void, under the clause of the federal constitution which forbids the states to pass any law impairing the obligations of a contract. The argument is that the provision of the charter of the former City of East Portland, under which the first improvement was made, that when a street had been once improved it should not be subject to be again improved, constituted, when the street had in fact been improved, a contract between the public and the property owner by which the state for all time so tied up its hands as to preclude it from granting to the municipality the power to reimprove the street, except out of the general fund, and at the expense of the entire property of the city. It is familiar law that any legislation by a state which impairs in any respect the obligations of a valid contract between individuals, or between the state or one of its governmental agencies and any person or corporation, is violative of the provisions of the federal constitution referred to, and void. This doctrine has been so often announced by the Supreme Court of the United States, beginning with *Fletcher* v. *Peck*, 10 U. S. (6 Cranch) 87, and the *Dartmouth College Case*, 17 U. S. (4 Wheat.) 518, that the principles upon which it rests, as

said by Mr. Justice SWAYNE in *Von Hoffman* v. *City of Quincy*, 71 U. S. (4 Wall.) 535, "are now axiomatic in American jurisprudence, and are no longer open to controversy." And it may be regarded as equally well settled, though not without protest on the part of the state courts and the earnest dissent of several of the federal judges, that a contract by the state granting immunity from taxation to an individual or corporation is within the constitutional provision inhibiting the passage of laws by the state impairing the obligations of contracts: Cooley on Constitutional Limitations, *274. See, also, Mr. Russell's admirable article in 30 Am. Law Rev. 321, on the "Status and Tendencies of the Dartmouth College Case." The controversy in the case before us lies, therefore, in very narrow limits. The only question is whether the provisions of the charter of East Portland, under which the street was improved in 1883, was a contract between the public and the owner that such property should thereafter, for all time, be exempt from special taxation for the improvement of the street in front thereof. If so, the plaintiffs are entitled to the relief demanded. If not, the suit should be dismissed.

The supreme court of the United States, in interpreting the clause of the constitution now under consideration, has always taken the terms thereof in their ordinary meaning, and holds that the word "contract," as used therein, means a voluntary agreement of minds, upon a sufficient consideration, to do or not to do certain things: *Murray* v.

*Charleston*, 96 U. S. 432; *Louisiana* v. *Mayor, etc., of New Orleans*, 109 U. S. 285 (3 Sup. Ct. 211); *Fisk* v. *Jefferson Police Jury*, 116 U. S. 131 (6 Sup. Ct. 329). And in our opinion the legislation in question has none of the essential ingredients of such a contract. The power to assess the costs of the improvement of a street upon abutting property is embraced within the sovereign power of taxation primarily in the legislature, but which it may constitutionally delegate to local municipal governments, with or without restraints or limitations; but it is "never presumed to be relinquished unless the intention to relinquish is declared in clear and unequivocal terms": *Philadelphia Railroad Company* v. *Maryland*, 51 U. S. (10 How.) 394. And even then, if the exemption is not supported by some consideration, it may be revoked at any time: *Rector, etc., of Christ Church* v. *County of Philadelphia*, 65 U. S. (24 How.) 300. The charter of East Portland, under which the first improvement was made, was a partial delegation of such power to the city, and, when once exercised, was exhausted,—not, however, by reason of any contract between the public and the lot owner, nor because the power of taxation in the state was not adequate to require an assessment for the reimprovement of the street, but because the power delegated to the city had by its express terms ceased to exist. And how can this provision of the charter be tortured into a contract? It does not purport to be one, for it makes no offer of exemption to the landowner, either expressly or impliedly, in consideration of the performance of some

voluntary act on his part; nor does it ask or agree to accept anything from him which the state could not have unconditionally exacted. The assessment of the cost of improving the street in front of his property was an exercise of sovereignty, and a proceeding *in invitum.* He was simply required to discharge a duty which he owed to the public, and the performance of which cannot by any show of reason be construed into a consideration moving from him to the state upon which a contract can be supported. The validity of assessments for local improvements is sustained on the theory of special benefits corresponding in value to the cost of the improvement, and so the property owner receives, in theory at least, full value for the money exacted from him; and, therefore, plaintiffs' predecessor, in paying the assessments made against his property for the first improvement of the street, sacrificed no legal right, nor did he make any extraordinary or unusual contribution to the public. He simply paid for the special benefits conferred. The manifest purpose of the provision of the charter under consideration was to define the mode and extent of the power of the council in the matter of street improvements, and the limitation on the exercise of such power was a mere concession to the citizen, and an act of grace, and not a contract by which the state forever relinquishes the sovereign power of taxation. It was a limitation voluntarily imposed by the legislature upon the powers of the city, which that department of the state government could remove at any time public policy or the in-

terests of the municipality might seem to demand, and bound the state only so long as the statute remained unrepealed.

No authority, federal or state, has been cited which goes to the extent of holding such legislation to be a contract, within the meaning of the federal constitution; while the courts of Kentucky and New Jersey have held that a provision in a city charter similar to the one now under consideration does not constitute such a contract, but that the legislature may constitutionally thereafter remove the limitation, and authorize the city to reimprove or rebuild the street, and assess the cost thereof to the abutting property: *Bradley* v. *McAtee*, 7 Bush, 667 (3 Am. Rep. 309); *State ex rel* v. *Mayor, etc., of Newark*, 35 N. J. Law, 168; *State ex rel* v. *Mayor, etc., of Newark*, 37 N. J. Law, 415 (18 Am. Rep. 779). These are the only cases in point of which we have any knowledge, and the reasoning of Mr. Chief Justice BEASLEY in the New Jersey case (37 N. J. Law, 424) is so clear an exposition of the law, and it seems to us so unanswerable in its logic, that we quote from it at length. He says: "This statute declares that it shall be lawful for the common council, on the application of three-fourths of the owners of property in any street, to order, etc., and it then adds, 'that after such grading, etc., is effected, then the city shall take charge of and keep the same in repair, without further assessment': Public Laws, 1849, p. 206. The argument was that, after the landowners had petitioned, and the work was done, a bargain was constituted,

the essential stipulation of which is that the expense of keeping the street in order shall be borne by the public. But how is this language to be converted into that of contract? It is not so in form, for it makes no offer to the landowner. Nor is the substance with which it deals the subject matter of agreement. It does not purport to ask from the citizen anything which the state has not the right to demand. The purpose is to define the mode and the extent of the legislative power of the municipality. The power conceded might have been given in an unqualified form, but its exercise was restricted with the condition that it should not be used unless a certain proportion of the owners of property consented, and that the power should not be used a second time. But these limitations on the prerogative of local legislation are concessions to the citizen, and cannot with any show of reason be transformed into considerations moving from the citizen to the state, on which a contract can be built up. The admission of such a doctrine would carry many mischiefs with it. Agreements could be inferred from the large number of the ordinary acts of legislation. Public roads are laid on the application of a certain number of freeholders, and the statute directs 'that after such roads are laid they shall be opened and maintained at the public expense.' Why, under such circumstances, cannot a contract be claimed as well as in the case now in hand? Numerous other examples of laws, from which, by the same course of reasoning, contracts might be deduced, will readily occur,

if the mind is given to the subject. Neither do the decisions which were cited lend, as it appears to me, the least countenance to the doctrine in question. They are all cases outside of the ordinary field of legislation, and in which the citizen was induced to do some act, or yield up some right or property which could not be taken from him except by his voluntary cession. The true principle undoubtedly is that when it is alleged that any part of the sovereign power has been parted with, by force of an agreement, such agreement must be clearly manifested. The cases are largely collected in the excellent work of Chief Justice Cooley on Constitutional Limitations at page 280. The language of the present statute has not such an aspect, and the intendment that it was the intention to give up forever any part of the public control, with respect of the mode of keeping in order the streets of a great city, is not to be entertained for an instant."

This disposes of the first point, and there is no force in the contention of plaintiffs that, because the act of consolidation and the present city charter provide that no rights previously vested nor liabilities previously incurred should be lost, destroyed, or impaired, the legislature was prohibited from thereafter authorizing the City of Portland to reimprove the street in question at the expense of the abutting property; for, unless the provisions of the charter of 1870 are to be interpreted as a contract between the owners of the property abutting a street once improved and the public, the plaintiffs clearly had no vested right to an exemption

from assessments for street improvements. It follows that the decree of the court below must be affirmed, and it is so ordered.

.            AFFIRMED.