[S. F. No. 6460.    Department Two.—May 28, 1915.]

## THE BARBER ASPHALT PAVING COMPANY (a Corporation), Appellant, v. CHARLES JURGENS, Respondent.

STREET LAW—VALIDITY OF ORDINANCE ACCEPTING STREET—BURDEN OF ESTABLISHING.—The burden of proving the defective publication of an ordinance accepting a street, and of proving facts tending to invalidate such ordinance rests upon the party attacking the ordinance.

ID.—RECITAL IN ORDINANCE.—It is sufficient if such an ordinance recites that the roadway was constructed to the satisfaction of the superintendent of streets and the city council, although section 20 of the Vrooman Act uses the words "*fully* constructed to the satisfaction, etc."

ID.—JURISDICTION.—Section 20 of the Vrooman Act does not require an ordinance accepting a street to state that the street was "in good condition throughout" and failure to contain such a recital does not invalidate such an ordinance. If a legislative body has jurisdiction to act upon a certain state of facts, action by the body raises the presumption that the facts existed.

ID.—CURBING.—The Vrooman Act contemplates curbing as a part of the roadway and an acceptance of a roadway is an acceptance of the whole of it, including curbing.

ID.—ZONE OF STREET WHICH RAILROAD COMPANY IS BOUND TO REPAIR.—Section 20 of the Vrooman Act should be read in connection with section 498 of the Civil Code, and exception from the ordinance of

CLXX Cal.—18

that part of the street which the railroad company is bound to repair does not invalidate the ordinance accepting the street.

ID.—ABSENCE OF DATUM PLANE.—The absence of a datum plane does not affect the validity of an ordinance accepting a street, although the grade should be established before the letting of public contracts for street work.

ID.—ESTOPPEL.—A property owner is not estopped from asserting the defense that the street had been accepted by the city because of his failure to protest to the city council against letting the contract, or because with knowledge of the ordinance accepting the street he remained silent while the work was being done.

ID.—EXEMPTION OF PROPERTY OWNER FROM TAXATION BY ACCEPTANCE OF STREET.—Section 20 of the Vrooman Act provides for the creation of a *status* by the passage of the ordinance accepting the street and upon this *status* the sovereign power creates an exemption. This exemption was not removed by the amendment to section 6 of article XI of the constitution which freed cities and towns in all "municipal affairs" from control by general laws.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Snook & Church, and J. A. Cooper, for Appellant.

R. M. F. Soto, *Amicus Curiae,* for Appellant.

Mortimer Smith, and Chapman & Trefethen, for Respondent.

Beggs & McComish, and D. C. Murphy, *Amici Curiae,* for Respondent.

MELVIN, J.—Plaintiff appeals from a judgment in favor of defendant and from an order denying plaintiff's motion for a new trial.

The action was to foreclose the lien of a street assessment for work on San Pablo Avenue in the city of Oakland. The findings of the court were in substantial compliance with the defendant's answer, and, in brief, were to the effect that the contract between the superintendent of streets and the plaintiff was made before the expiration of ten days after the posting and publication of the notice of award of contract; that the contract as recorded was different from the one actually signed, the lands within the district described in the recorded

contract never having been subjected to an estimate as required by law; and that San Pablo Avenue was an accepted street when the contract for the work was let.   If the finding last mentioned be correct and if the force and effect attributed to it by the court be warranted, we need not consider the other findings which are questioned by the appellant, because in that event we must hold that the land of defendant abutting on San Pablo Avenue was not subject to assessment for street work.   The finding with reference to the ordinance accepting San Pablo Avenue is as follows: "That on the 4th day of February, A. D. 1889, the said city council of the said city of Oakland, by ordinance No. 1071, entitled 'An ordinance providing for the acceptance of the roadway of San Pablo Avenue from its intersection with the westerly line of Broadway to the northern boundary line of the city of Oakland,' duly accepted said San Pablo Avenue as a public street; and that ever since said 4th day of February, A. D. 1889, the said San Pablo Avenue was and now is an accepted public street of the said city of Oakland."

Appellant attacks the ordinance mentioned in the finding quoted above upon several grounds.   Certain informalities in the adoption of the ordinance are discussed in the briefs and are said by appellant to be fatal to its validity.   By the terms of the by-law that portion of the roadway "required by law to be kept in order or repair by any person or company having railroad tracks thereon" is excepted from the city's acceptance.   This, according to appellant's views, was an unlawful deviation from the powers of the city.   The ordinance purports to accept the "roadway" of San Pablo Avenue and the alleged failure to include the curbing in that designation is relied upon by plaintiff as a fatal defect therein.   The ordinance is also attacked because it contains no recital that the part of San Pablo Avenue sought to be accepted had been fully constructed to the satisfaction of the superintendent of streets and of the city council.   Appellant also condemns the ordinance because at the time of its adoption no datum plane had been officially adopted by the city of Oakland and no official grade had been established thereon. As a consequence, it is argued, the work approved and adopted was in contemplation of law no improvement at all.   The argument is also advanced that by the change in the constitution giving cities full control over "municipal affairs" the *status* of San Pablo Avenue, established by the mandate of a

general statute ceased to be of any avail as against the city of Oakland, which was not bound by a condition which, by a declaratory ordinance the city had recognized as being in existence; and furthermore that the city after the said amendment to the constitution was not bound, under the law to refrain from assessing property abutting on San Pablo Avenue for the improvement of that street. It was also urged against the position of respondent that by failing to appeal to the city council for relief because of the existence of "Ordinance No. 1071" he waived his defense based thereon and is estopped upon principles of equity from setting it up in this action.

Section 20 of the General Street Law [Stats. 1885, p. 160], is substantially as follows:

"Whenever any street . . . has been or shall be fully constructed to the satisfaction of the superintendent of streets and of the city council, and is in good condition throughout, and a sewer, gas-pipes and water-pipes are laid therein under such regulations as the city council shall adopt, the same shall be accepted by the city council, by ordinance, and thereafter shall be kept in repair and improved by the said municipality; the expense thereof, together with the assessment for street work done in front of city property, to be paid out of a fund to be provided by said council for that purpose; provided, that the city council shall not accept of any portion of the street less than the entire width of the roadway, (including the curbing), and one block in length, or one entire crossing. . . . The superintendent of streets shall keep in his office a register of all streets accepted by the city council under this section, which register shall be indexed for easy reference thereto."

The court found the history of the passage of the ordinance as follows: "Said ordinance was passed on the 7th day of January, 1889, and from the minutes of the city council of said city it appears that on the 21st day of January, 1889, the mayor of said city vetoed said ordinance, whereupon the consideration of the same was made a special order for the next regular meeting of said city council, to wit: February 4th, 1889, upon which last named date the city council of said city of Oakland, by a vote, did not sustain said veto of said mayor, but at that time and place said city council of said city passed said ordinance, six (6) councilmen voting in the

affirmative and one (1) councilman voting in the negative; and that at said time seven (7) members constituted the city council of the said city of Oakland.'' Appellant makes the point that the ordinance was not ''reconsidered'' and passed over the mayor's veto, but we think the records of the city council do show that the action of the council was substantially a reconsideration and passage of the by-law.

There was no formal proof of the publication of the ordinance as required by law (Stats. 1862, p. 353), but there was proof of all of the usual formalities of the passage of an ordinance over the mayor's veto. Mr. Thompson, the city clerk, testified that the exhibit which was received in evidence was the original record. Evidently there was no written entry of the publication of the ordinance. Respondent's council contend that formal proof of publication was not a prerequisite to the admission of the ordinance in evidence. In this behalf he quotes from the opinion written by Mr. Justice Van Fleet in *Santa Rosa City R. Co. v. Central Street Ry. Co.*, 4 Cal. Unrep. 950, [38 Pac. 988]. That opinion is not authoritative for the reason that the case was reheard and the judgment was affirmed by reason of a failure of the court to agree. Originally Justices McFarland and Fitzgerald concurred in the opinion of Justice Van Fleet and Justice Garoutte concurred in the judgment, while Justices Harrison and De Haven dissented. After a change in the personnel of the court, Justices Van Fleet, Garoutte, and McFarland adhered to their belief that the judgment should be reversed for the reasons given in Justice Van Fleet's opinion, while Justices Henshaw, Harrison, and Temple were of the opinion that it should be affirmed. As the chief justice was disqualified the judgment stood affirmed by reason of the failure of a majority of the associate justices to agree. It does not appear, however, that the matter of failure to prove publication of the ordinance and Justice Van Fleet's discussion of that phase of the case caused the diversity of views. (*Santa Rosa City Railroad* v. *Central Street Railway Co.*, 112 Cal. 436, [44 Pac. 793].) In the opinion of the dissenting justices, their dissent is based solely upon their belief that a forfeiture of plaintiff's franchise occurred by reason of its failure to complete its road within the prescribed time. Therefore, while the opinion published in the Pacific Reporter does not stand as an authoritative declaration of the

law on this subject, we think it is worthy of adoption upon the point here involved. Before quoting from said opinion it may be well to refer to the provisions of the charter of Oakland existing at the time of the passage of the ordinance. It was provided that "all ordinances shall be published by written advertisements posted up at the mayor's office and at three other public places in the city or in a newspaper published in the city." (Stats. 1862, p. 353); also that "Every ordinance passed by the city council shall be presented to the mayor for his approval; if he approve, he shall sign it; if not, he shall return it within five days thereafter, or if the city council be not then in session, at its next meeting, when said city council shall reconsider said ordinance; and if approved by two-thirds of all the members elected to such board, it shall take effect and stand as an ordinance of the city." (Stats. 1862, p. 342.) There was no provision as in the Santa Rosa charter that proof of the passage and publication of ordinances might be made in "the usual way," but section 61 of the Practice Act (the predecessor of section 459, Code Civ. Proc.), was then in force, and under it one seeking the advantage of an ordinance might plead it (and consequently prove it *prima facie*) by referring to it by its title and the day of its passage. This was "the usual way," consequently the language of the learned justice in the Santa Rosa case, which we quote below, is entirely applicable to the condition presented by this record. He said: "There can be no doubt that publication in a newspaper or by posting is made by that statute a condition precedent to the taking effect of an ordinance; but it does not follow that direct proof of that fact is essential in any case. The statute expressly allows the passage and publication of ordinances to be proved 'in the usual way'; that is, by such proof as would be sufficient to prove such facts in any other case. . . . As was said in *City of Atchison* v. *King,* 9 Kan. 550, 556: 'The city having passed the ordinance four or five years before it was offered in evidence, and having acted upon it as valid, will not now be allowed in such an action to deny its publication. Such a rule would be a great inducement to cities to disobey the law. They get the benefits and escape the inconveniences of the law by such a course, as it would in most cases be impossible for a stranger to prove a publication four or five years after the passage of the ordinance, when the publica-

tion is by posted notices.   Nor would the difficulty be much less where it was published in a newspaper, in a country where newspaper changes are as frequent as they are in this state.   It was the duty of the city authorities to publish the ordinance.   As they acted on it, the presumption is that it was duly published; and at least this presumption is sufficient till the contrary appears.' ''

In *Van Buren* v. *Wells,* 53 Ark. 377, [22 Am. St. Rep. 214, 14 S. W. 38], it was held that the burden of proving publication was not placed upon the person asserting a right under the statute, but upon the one denying its validity.   (See, also, *Muir's Adm'rs* v. *City of Bardstown,* 120 Ky. 750, [87 S. W. 1096]; *Missouri Pacific Ry. Co.* v. *Chick,* 6 Kan. App. 482, [50 Pac. 605]; McQuillin, Municipal Corporations, sec. 864.) Proceedings for the assessment of property for street improvements being *in invitum,* it follows that after the defendant has proven, in the usual manner, the existence of an ordinance preserved in the city's official records as the true and genuine act of its common council, purporting to cast upon the city the burden of paying for the work, facts tending to invalidate such ordinance must be proven by the city or the person seeking to deny the city's liability.

But appellant attacks the ordinance on the ground that it fails to recite that the work on San Pablo Avenue had been *fully constructed to the satisfaction of the superintendent of streets and of the city council,* or that the street was *in good condition throughout.*   The ordinance does recite the construction of the roadway to the satisfaction of the superintendent of streets and the city council.   The omission of the word ''fully'' before ''constructed'' we deem not important. Satisfaction sufficient to cause the councilmen to vote to accept the street must be regarded as full satisfaction for all practical purposes.   There was no recital that at the date of the passage of the ordinance the street was ''in good condition throughout.''   It is argued that where the jurisdiction of an inferior tribunal depends upon facts to be ascertained by such tribunal, its records must affirmatively show the existence and determination of such facts.   *Bedell* v. *Scott,* 126 Cal. 675, [59 Pac. 210], and similar cases are cited in support of this position, and appellant asserts that a finding of the good condition of the road was not only a prerequisite to acceptance, but that such finding must be recited in the

ordinance in order to give validity to that enactment. The doctrine announced in *Bedell* v. *Scott* has been somewhat modified by the later decision in *Gardella* v. *County of Amador,* 164 Cal. 561, [129 Pac. 995]. This court said in *Chase* v. *Trout,* 146 Cal. 369, [80 Pac. 81] : "Where a legislative body is given power to act whenever it shall find a given fact to exist, it is not necessary, as a condition to the exercise of the power, that such body should previously or contemporaneously make a declaration that the fact exists. The fact that it takes the action raises the presumption that it had upon inquiry ascertained the existence of the fact, unless the statute giving the power explicitly requires an express finding or declaration of the conditions precedent." Section 20 of the Vrooman Act [Stats. 1885, p. 160], does not require that an ordinance accepting a street should show upon its face that the street was "in good condition throughout." Therefore the omission of that recital from the ordinance did not nullify its force and effect.

In the ordinance in question that part of the street which according to law was required to be kept in order by a railroad company was excepted from the operation of the by-law and the curbing was not specifically mentioned as a part of the "roadway" which the city accepted. Both of these omissions are specified by appellant as fatal to the efficacy of the ordinance. *Beaudry* v. *Valdez,* 32 Cal. 276, is cited as authority for the proposition that curbing may not be considered a part of the "roadway." That case merely holds that the term "macadamizing" does not include "curbing." Section 20 of the Vrooman Act was evidently drawn with the intention of specifying curbing as a part of the roadway, because the city is therein inhibited from accepting any portion of the street "less than the entire width of the roadway (including the curbing)." The curbing is, therefore, for the purposes of the act, included within the definition of the term "roadway," and an acceptance of a "roadway" in compliance with that section is an acceptance of the whole of the roadway including the curbing. Nor did the exception from the ordinance of that part of the street which the railroad company is bound to repair make the ordinance a nullity. It is consistent and proper to read section 20 of the Vrooman Act in connection with section 498 of the Civil Code. While it is true that the former statute requires the council to accept

the entire roadway, if any part, it is equally true that for the purposes of street assessment the zone which the railroad company is bound to keep in repair is not a part of the roadway. In *San Francisco Paving Co.* v. *Egan,* 146 Cal. 638, [80 Pac. 1076], which was an action to foreclose the lien of a street assessment, the board of supervisors had in the resolution of intention specifically excepted ''that portion required by law to be kept in order by the railroad company having tracks thereon,'' although the statute only authorized the omission of those portions of the street on which work previously had been performed by owners of land fronting thereon. It was held that the board of supervisors had the right to except in its resolution that part of the street which the railroad company was bound under its franchise to keep in order. While *Oakland Paving Co.* v. *Rier,* 52 Cal. 276, is in seeming conflict with this conclusion, we are not favored with the text of the resolution of the council there reviewed. The opinion merely says that the council did not accept the full width of the street. The resolution was also held of no effect under section 20 of the Vrooman Act because it sought to express acceptance of work done rather than of the *street* upon which the material and labor had been bestowed.

Because no datum plane had been established and officially adopted by the city of Oakland prior to the adoption of ordinance No. 1071, appellant insists that the attempted acceptance of San Pablo Avenue was beyond the power of the city council. It is true that without a datum or basis fixed for the grade of a street a contractor may not know how far he may be compelled to go in filling or grading and therefore it is proper that a grade should be fixed before the letting of public contracts for street work. But this is not a question between the city and a contractor or a prospective bidder whose rights are in danger of being violated because of the nonexistence of an official grade. When a municipality engages with the owners of property to keep the roadway of a street in repair it makes such engagement in view of the existing facts and the existence or nonexistence of an official datum plane is entirely immaterial to the force and validity of its ordinance of acceptance.

It is also suggested that respondent's failure to appeal to the council for relief estopped him from maintaining this defense, that being presumed to know of the existence

of the ordinance he remained silent while the work was being done, and the failure to present his objections and his defense to the city council precluded him from an assertion of such defense before any other tribunal. But the presumption of knowledge did not attach to the respondent with any greater strength than it applied to the city or to the contractor. What could the council have done to remedy the situation? It could not have removed the effect of the ordinance. The council had the right to order the improvement and the property owner could not question that right, but he could contest the contractor's right to collect from him after the work was completed. In *Flickinger* v. *Fay,* 119 Cal. 590, [51 Pac. 855], the facts were these: The common council of the city of San Jose had ordered certain work done on a street and had entered into a contract with the respondent, but the appellant who owned property abutting on the street sought by injunction to restrain prosecution of the improvement on the ground that he would be charged with a proportion of the cost in violation of a resolution of the council by which the street had been accepted in accordance with the provisions of the street improvement act. This court held that the injunction was properly denied, and said, among other things: "Whether the cost of that work shall be borne by the city, or be assessed upon the adjacent lands, will be determined after the work under the contract has been completed. If, for any reason, an assessment therefor cannot be legally made upon the lands of the plaintiffs, they will then be entitled to relief against such procedure, or can successfully defend any proceeding to enforce the assessment." Besides it has been held that the doctrine of estoppel has no application in proceedings to enforce liens for street work. (*Heft* v. *Payne,* 97 Cal. 110, [31 Pac. 844]; *Union Paving & Contracting Co.* v. *McGovern,* 127 Cal. 639, [60 Pac. 169].)

In opposition to the superior court's conclusion that no lien could attach upon the property for the improvement made, for the reason that at the time the contract was made San Pablo Avenue was an accepted street, we are favored with an elaborate brief by one of the *amici curiae* wherein it is argued that no exemption existed by reason of the ordinance provisions. In support of this contention counsel insists that section 20 of the Vrooman Act before its repeal in 1911 (which was subsequent to the completion of the work here

considered) created no vested or contractual right when it was complied with, and that the exemption therein provided for was a mere gratuity, revocable at the will and pleasure of the power bestowing the gratuity. The question whether or not exemptions of this sort create a contractual relation has been twice before this court, but it was not decided either time. (*San Francisco* v. *Certain Real Estate*, 42 Cal. 521; *Oakland Paving Co.* v. *Rier*, 52 Cal. 276.) Generally speaking, however, the principles of taxation are not those of contract and it has frequently been decided in other jurisdictions that payment by a property owner for improvements to a street in nowise constitutes a consideration moving from him to the city which would support a contractual obligation. (See *Ladd* v. *City of Portland*, 32 Or. 271, [67 Am. St. Rep. 526, 51 Pac. 654], and cases cited.) On the other hand, there are authorities which hold that where an assessment has been made under powers properly exercised and has been duly paid, a second assessment should be borne by the general public for the reason that the benefits to the owner of abutting property of such second improvement is reduced to a minimum and that the real benefit being to the community generally, the municipal treasury should bear the burden. (*Hammett* v. *Philadelphia*, 65 Pa. St. 146, [3 Am. Rep. 615].) The principle upon which owners of abutting property are charged with the cost of street improvements, in the first instance, is that their property is benefited in a special manner. In recognition of this doctrine, statutory provision is often made for exempting property from the operation of an assessment where a prior improvement had been ordered and constructed, or for the giving of some credit for the value of such prior improvement, and when such exemption or credit has been ordered in conformity with statute or ordinance, it has usually been sustained. The policy of the legislature of this state has been to recognize that the special benefit which an abutting owner has received by reason of street improvements has been satisfied by the payment of one assessment and that under a second improvement an owner of property abutting thereon does not derive any advantage beyond that enjoyed by all other citizens. Section 20 of the Vrooman Act is a legislative recognition of a right to exemption which ought to exist under all conditions of fairness and justice. Irrespective of the question of what rights might or might

not accrue under the exemption, it is admitted that the section provides for the creation of a certain *status* by the adoption of an ordinance of acceptance, and that the moment this *status* is brought into existence the sovereign power of the state operates, through the act, to create an exemption. It is contended, however, that while this exemption continued to exist after the adoption of a freeholders' charter, the provisions of which were consistent with the Vrooman Act, this situation was changed in November, 1896, by the amendment to section 6 of article XI of the constitution, under which cities and towns theretofore or thereafter organized, and the charters of such cities and towns were freed in all "municipal affairs" from any further subjection to or control by general laws, and that upon the adoption of the amendment, the freeholders' charter became exclusively operative in matters of street improvements and acceptance, and that accordingly any exemption created under general laws became extinguished. In support of this theory it is argued that to hold otherwise would have the effect of interfering with the power of taxation by the city, by increasing the burden on the general taxpayers by reason of the fact that the exemption would augment the area of land relieved from assessment for street purposes by acceptances under section 20 of the Vrooman Act. This contention cannot be maintained. The delegation of exclusive authority by constitutional provision to municipalities in municipal affairs does not of itself have the effect of repealing all general laws with reference to such affairs. Rights existing under a statute in force when a constitutional amendment is adopted are not affected by it unless it contains some provision which specifically abrogates such pre-existing rights. (1 Page & Jones on Taxation, sec. 166.) Unless intent to repeal the terms of a special law is evident from the language of a constitutional provision, courts should assume as a rule of construction that only a prospective operation of the constitutional provision was contemplated. (*State* v. *Frazier,* 98 Mo. 426, [11 S. W. 973].) Constitutional provisions do not affect laws in existence unless the words employed show a clear intention that the provisions shall have a retroactive effect. (*Mestas* v. *Diamond Coal & Coke Co.,* 12 Wyo. 414, [76 Pac. 567]; Hamilton on Assessments, secs. 196, 201 [note].) The constitutional amendment here invoked to defeat the asserted

exemption contains no such provision, nor was any ordinance ever adopted, under this grant, so far as this record discloses, attempting to revoke the exemption provided for in the Vrooman Act and declared by the ordinance of the city of Oakland which we have been here reviewing. Both the act and the ordinance having been in force at the time of the improvement for which plaintiff seeks payment from defendant, it follows that, as the street had been duly accepted, the assessment was void.

Our conclusion with reference to this branch of the case makes it unnecessary for us to discuss the other alleged errors.

The judgment and order from which plaintiff has appealed are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.