[Civ. No. 8461. First Appellate District, Division Two.—June 22, 1932.]

DANIEL I. KING, Respondent, v. LEONARD S. LEAVY, as Controller, etc., Appellant; SAN FRANCISCO BUREAU OF GOVERNMENTAL RESEARCH (a Corporation), Intervener and Appellant.

John J. O'Toole, City Attorney, and Frank L. Fenton for Appellant.

Robert M. Searls, Francis V. Keesling and Jesse H. Steinhart for Intervener and Appellant.

John J. Dailey for Respondent.

STURTEVANT, J.—This is an appeal from the judgment of the trial court granting to the petitioner a writ of mandate. The petitioner is and for some years has been a boilermaker employed in the fire department of San Francisco. On the 15th of January, 1932, he applied for his pay, $96.19, and believing that the demand was higher than authorized by law the defendant, as controller, refused to audit the demand. Thereupon this proceeding was commenced. The San Francisco Bureau of Governmental Research intervened.

There is no claim that prior to January 8, 1932, the date the new charter took effect, the appointment or compensation

of the petitioner was irregular. However, the defendant claims that for the period subsequent to January 8, 1932, and prior to January 15, 1932, the pay of the petitioner was governed by the provisions of the new charter and ordinances enacted in accordance with the provisions of said charter. In reply the petitioner denies that he is asking anything prohibited by the charter and asserts that the charter is silent on the subject and that his claim does not conflict with the ordinances which have been enacted since the charter took effect. Ordinance 9001, the budget ordinance, was approved June 3, 1931, and deals with the year June 30, 1931, to July 1, 1932. Ordinance 9019 was approved June 30, 1931, and provides for the conversion of per diem compensation into a monthly compensation and also provides for a five-day week. Ordinance 9135 was approved January 6, 1932. It is an appropriation ordinance and among other things it appropriated $103,540 for the fire department. Ordinance 9136 was passed by the supervisors on January 6, 1932. It was approved by the mayor on the thirteenth day of January, 1932. It is designated "Annual Salary Ordinance". Section 11 deals with the fire department. It purports to set forth the monthly compensation of the employees. The position of boilermaker appears as one of the items and the compensation is stated at $202.50.

Under section 141 of the charter it is provided that the civil service commission will propose a salary standardization. On April 9, 1930, almost two years before the charter took effect, a document of that character was prepared. No ordinance approving it was ever passed. On the trial of this case the intervener nevertheless tendered said document in evidence. An objection was made and was sustained. We see no error in the ruling. The document was inchoate. In that form it was not evidence in this case for either party.

It is contended that Ordinances 9019 and 9136 provided for compensation to petitioner in excess of that allowed by sections 71 and 151 of the charter. When those ordinances were introduced the charter had not taken effect. It is therefore quite immaterial whether the ordinances complied with the provisions of the charter. It is not claimed that said ordinances were in any respect in violation

of the provisions of the charter that was in effect at the time said ordinances were introduced.

The next claim made is that all ordinances in conflict with the new charter were automatically repealed as to conflicting provisions when the new charter took effect. (2 McQuillin on Municipal Corporations, sec. 940; 43 C. J. 567.) The same rule is implied by the sentence in section 2 which is that "All ordinances or resolutions in force at the time this charter takes effect and not inconsistent therewith shall continue in force until amended or repealed." Conceding the contention to be a sound rule of law, nothing is called to our attention showing any conflict. No passage in the charter purports to abolish the position which the petitioner holds nor to fix nor alter the amount of his compensation. But, adverting to facts which do not appear on the face of the ordinances, it is argued that, when such facts are taken into consideration then the ordinances conflict with the charter. Thus it is asserted that the sum of $2,430 inserted in the budget was based on a 270-day year; that the monthly wage was set at $202.50 by dividing $2,430 by 12; and that later a five-day week and a 254-day year was provided for. And that, in making the latter changes, Ordinance 9019 "automatically increased petitioner's compensation beyond that which he received January 1, 1931, by some $12.00 per month." We do not understand the appellants to claim that any one of the ordinances was invalid when enacted. Their claim is that after the new charter took effect on January 8, 1932, the ordinances operated in such a manner as to be in conflict with the charter. Again, we do not understand the appellants to claim that any one of the ordinances conflicted with any express provision in the charter. However, we do understand them to contend that the theory of the charter is such as to prohibit the objections complained of. Among others the charter contained the following passages which we have re-arranged for the purpose of clearly presenting the plan of the framers. The letters are our own.

(A) "Sec. 141. The civil service commission shall be the employment and personnel department of the city and county and shall determine appointments on the basis of merit and fitness, as shown by appropriate tests. The commission shall classify, and from time to time may reclassify,

in accordance with duties and responsibilities of the employment, and training and experience required, all places of employment in the departments and offices of the city and county not specifically exempted by this charter from the civil service provisions thereof, or which may be created hereafter by general law and not specifically exempted from said civil service provisions.

(B) "Sec. 151. . . . In fixing schedules of compensation, as in this section provided, the board of supervisors, through the civil service commission shall cause a schedule of compensations to be proposed, based upon the classification as provided in section 141, under which like compensation shall be paid for like service, with due regard to the seniority of the personnel included in each class, and with regard also to other compensations in the city and county service not subject to salary standardization. Such compensation shall be not higher than prevailing rates for like service and working conditions in private employment or in other comparable governmental organizations in this state.

(C) "Sec. 151. . . . The board of supervisors may approve, amend or reject the schedule of compensations proposed by the civil service commission; . . .

(D) "Sec. 151. The board of supervisors shall have power and it shall be its duty to fix by ordinance from time to time, as in this section provided, all salaries, wages and compensations of every kind and nature, except pension or retirement allowances, for the positions, or places of employment, of all officers and employees of all departments, offices, boards and commissions of the city and county in all cases where such compensations are paid by the city and county.

(E) "Sec. 71. . . . No compensation shall be increased so as to exceed the salary or wage paid for similar services and of like character and for like service and working conditions in other city departments or in private employments, nor so as to exceed the rate fixed for such service or position in the proposed schedule of compensations issued by the civil service commission under date of April 9, 1930, except as such proposed schedule or compensation is amended as provided in this charter, or extended by the civil ser-

vice commissions to include classifications not included therein.

(F) "Sec. 9. . . . The supervisors shall determine the maximum number of each class of employments in each of the various departments and offices of the city and county and shall fix rates and schedules of compensation therefor in the manner provided in this charter. On the recommendation of the mayor and the chief administrative officer, the board of supervisors may create or abolish departments which are now or may hereafter be placed under the chief administrative officer or under commissions appointed by the mayor.

(G) "Sec. 72. Not later than the first day of May in 1932, and in each year thereafter, the mayor shall transmit to the board of supervisors a consolidated budget estimate for all departments and offices of the city and county for the ensuing fiscal year, . . .

(H) "Sec. 72. . . . The mayor shall submit to the board of supervisors, at the time that he submits the annual budget estimate, a draft of the annual appropriation ordinance for the ensuing fiscal year, which shall be prepared by the controller. This shall be based on the proposed budget and shall be drafted in such detail as to furnish an adequate basis for accounting control by the controller of each appropriation item for the ensuing fiscal year. Upon submission it shall be deemed to have been regularly introduced and together with the proposed budget shall be published as required for ordinances.

(I) "Sec. 151. . . . Where compensations for services commonly paid on an hourly or a per diem basis are established on a weekly, semi-monthly or monthly salary basis for city and county service, such salary shall be based on the prevailing hourly or per diem rate, where this can be established, and the application thereto of the normal or average hours or days of actual working time, in the city and county service, including an allowance for annual vacation. Every person employed in the city and county service shall, after one year's service, be allowed a vacation with pay of two calendar weeks, annually, as long as he continues in his employment.

(J) "Sec. 71. . . . Pending the adoption of salary standards as in this charter provided, the salary and wage

rates for positions subject to such standardization shall be as recommended by the officer, board or commission having appointing power for such positions and fixed by the budget and annual salary ordinance; provided that any compensation paid as of January 1, 1931, to an incumbent who legally held a position in the city and county service at that time shall not be reduced so long as such incumbent legally holds such position.

(K) "Sec. 151. . . . Pending the adoption of salary standards as provided in this section, no increases in compensation shall be allowed other than as authorized in section 71 of this charter.

(L) "Sec. 2. . . . All ordinances or resolutions in force at the time this charter takes effect and not inconsistent therewith shall continue in force until amended or repealed.

(M) "Sec. 13. Action of the board of supervisors shall be by ordinance or resolution introduced in writing and passed or adopted by at least a majority of all the members at each reading."

It appears at once that the provisions of the charter are to be carried into effect by numerous ordinances. Therefore the provisions of the charter are not self-executing. (5 Cal. Jur. 579; *San Pedro etc. R. R. Co.* v. *Los Angeles,* 180 Cal. 18, 21 [179 Pac. 393]; *Older* v. *Superior Court,* 157 Cal. 770, 780 [109 Pac. 478]; *Spinney* v. *Griffith,* 98 Cal. 149, 151 [32 Pac. 974]; *Bailey etc. Iron Co.* v. *Goldschmidt,* 33 Cal. App. 661, 663 [166 Pac. 363].) Under such circumstances it will not be held that ordinances passed under the old charter will be superseded until the ordinances contemplated by the new charter take their place. The effect of adopting the Constitution of 1879 on the legislation that had been enacted under the Constitution of 1849 and the Constitution as amended in 1862, furnishes a close parallel. As above noted, section 2 of the charter provides: "All ordinances or resolutions in force at the time this charter takes effect and not inconsistent therewith shall continue in force until amended or repealed." Section 1 of article 22 of the Constitution contains a provision almost identical: "That all laws in force at the adoption of this Constitution, not inconsistent therewith shall remain in full force and effect until altered or

repealed by the legislature; . . . '' As early as 1866 a special act [Stats. 1865–66, p. 66] was adopted fixing the fees of officers in San Francisco. Such legislation was prohibited by the Constitution of 1879 [art. 4, sec. 25, subd. 29], which contained a provision that legislation on the subject of fees should be contained in a general law. The Constitution like the charter contains a passage that its provisions are mandatory and prohibitory unless otherwise stated. In 1895 a general law was adopted [Stats. 1895, p. 267] establishing fees. In *Miller* v. *Curry,* 113 Cal. 644 [45 Pac. 877], it was held that the special act continued in force and effect until the general act was adopted; and that thereupon the general act superseded the special act. Many similar cases may be cited. Another rule is also pertinent. There being nothing on the face of the charter to the contrary, its provisions are prospective and not retroactive. (*Barber Asphalt Pav. Co.* v. *Jurgens,* 170 Cal. 273, 284 [9 A. L. R. 597, 149 Pac. 560].) ▮ If any provision contained in any ordinance adopted before the charter took effect was in conflict with any self-executing passage in the charter it would stand repealed. If, however, the provisions in the charter were not self-executing, but required legislation to put them into effect, then they did not operate to repeal existing ordinances on such subjects. (*In re Stuart,* 53 Cal. 745, 749.) Under any other ruling it would necessarily follow that there would be a hiatus between the old ordinances and the new. That would create a chaotic condition in public affairs. There is nothing on the face of the charter showing that such a condition was intended or desired. (5 Cal. Jur. 566.) It is clear, however, that the objectionable conditions above specified were to be prevented in the future; but that such prevention would be accomplished by the enactment of the ordinances provided for in the sections of the charter hereinabove quoted from.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.